**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **DISABILITY LAW CLAIMS, P.A.  d/b/a LAVAN & NEIDENBERG, P.A.,** a Florida Corporation, **CASE GHOST, INC**., a Florida Corporation, | § § § § | |
| | § | **UNITED STATES DISTRICT COURT** |
| Plaintiffs, | § | |
| v. | § | **SOUTHERN DISTRICT OF FLORIDA** |
| | § | |
| **IM SOLUTIONS, LLC,** a Nevada Limited Liability Corporation, | § | **14-61177-CIV-DIMITROULEAS/SNOW** |
| | § | |
| Defendant. | § | |
| | § | |

**PLAINTIFFS' MOTION TO COMPEL, REQUEST FOR ATTORNEYS'**
**FEES AND SANCTIONS, AND BRIEF IN SUPPORT**

**LEWIS BRISBOIS BISGAARD & SMITH LLP**

C. Dunham Biles
Texas Bar No. 24042407
2100 Ross Avenue, Suite 2000
Dallas, Texas 75201
Telephone:     (214) 722-7100
Facsimile:     (214) 722-7111
Dunham.Biles@lewisbrisbois.com

**ATTORNEYS FOR PLAINTIFFS**
**DISABILITY LAW CLAIMS, P.A.**
**d/b/a LAVAN & NEIDENBERG,**
**P.A. and CASE GHOST, INC.**

4817-4885-7899.2

## TABLE OF CONTENTS

TABLE OF CONTENTS................................................................................................ i

TABLE OF AUTHORITIES ....................................................................................... iii

I.   PRELIMINARY STATEMENT ........................................................................1

II.  FACTUAL AND PROCEDURAL BACKGROUND.........................................2

    A.    The Parties ...............................................................................................2

         1.    Plaintiffs ......................................................................................2

         2.    Defendant ....................................................................................3

    B.    L&N Uses Its Proprietary Software To Screen And Qualify
        Leads It Purchases From IMS .................................................................3

    C.    The October 2010 Agreement Between L&N and IMS ...............................4

    D.    The Principals of L&N Form Case Ghost, An SSD Outsource Service .......................5

    E.    Plaintiffs Learn That IMS Has Breached The 2010 Agreement ...................5

III. SUMMARY OF ARGUMENTS .........................................................................6

IV.  APPLICABLE LEGAL STANDARDS ...............................................................7

    A.    The Scope Of Discovery ..........................................................................7

    B.    The Obligations Of The Deponent...........................................................8

    C.    Compelling Responses From Recalcitrant Parties .....................................9

    D.    Awarding Sanctions ................................................................................9

V.   ARGUMENTS AND AUTHORITIES...............................................................10

    A.    The Court Should Compel David Cooke To Answer Deposition
        Questions He Improperly Refused To Answer ................................................ 10

         1.    Cooke improperly refused to answer questions regarding
            his economic interests in the outcome of this Litigation .......................... 10

2.      Cooke improperly refused to answer questions regarding the
        sale of IMS that are relevant to damages and liability issues ................... 11

3.      Cooke improperly refused to answer questions regarding
        his interest in  Premier ........................................................................... 13

4.      Cooke improperly refused to answer questions regarding IMS selling
        leads to Premier, which are relevant to IMS's alleged breach of the
        right of first refusal provision of the 2010 Agreement and damages
        caused thereby ........................................................................................ 14

B.      The Court Should Compel John Emerick To Answer Deposition
        Questions He Improperly Refused To Answer ...................................................... 15

1.      Emerick improperly refused to answer questions regarding his
        conversations with Cooke regarding the matters at issue in this
        litigation ................................................................................................... 15

2.      Emerick improperly refused to answer questions regarding whether L&N
        disclosed its trade secrets to IMS in trust that they would not be disclosed
        to any other company, an issue relevant to Plaintiffs' claims, including
        misappropriation and breach of fiduciary duties ..................................... 16

3.      Emerick's Counsel improperly coached his client on how to answer a
        question through the guise of a long and improper speaking objection .... 16

4.      Emerick was improperly instructed by counsel to not answer questions
        based on baldly asserted confidentiality and then Counsel improperly
        instructed Emerick not to testify as to whether a confidential agreement
        exists ......................................................................................................... 17

5.      Emerick improperly refused to answer a question about what he
        meant when he said "I do not recall" ....................................................... 18

6.      Emerick improperly refused to answer questions regarding Premier
        Disability ................................................................................................. 18

7.      Emerick improperly refused to answer questions regarding IMS
        selling leads to Premier ........................................................................... 19

C.      Plaintiffs' Are Entitled To An Award Of Their Reasonable Attorneys' Fees And
        Their Expenses To Be Incurred For The Second Depositions Of Cooke And
        Emerick ............................................................................................................... 19

VI. CONCLUSION ................................................................................................. 20

# TABLE OF AUTHORITIES

## CASE LAW

*Centeno Supermarkets, Inc. v. H.E. Butt Grocery Co.*, SA-83-CA72,
1987 U.S. Dist. LEXIS 14168, at *12-13 (W.D. Tex. Sept. 2, 1987) ............................................9

*Dondi Properties Corp. v. Commerce Savings and Loan Ass'n*,
121 F.R.D. 284 (N.D. Tex 1988) ....................................................9

*Ferko v. NASCAR*, 218 F.R.D. 125 (E.D. Tex. 2003)....................................................7

*Furniture World, Inc. v. D.A.V. Thrift Stores*, 168 F.R.D. 61 (N.D.M. 1996) ...............................8

*Gober v. City of Leesburg*, 197 F.R.D. 519 (M.D. Fla. Nov. 8, 2000) ...........................................8

*Hickman v. Taylor*, 329 U.S. 495 (1947).......................................................7

*Howell v. Std. Motor Prods.*, 2001 U.S. Dist. LEXIS 5295, at *7-8
(N.D. Tex. April 27, 2001) ...................................................8, 9, 16

*Merrill v. Waffle House, Inc.*, 227 F.R.D. 467 (N.D. Tex. 2005)....................................................9

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978)....................................................7

*Quantachrome Corp. v. Micromeritics Instrument Corp.*,
189 F.R.D. 697 (S.D. Fla. Oct. 30, 1999) .......................................8

*Rangel v. Mascolio*, 274 F.R.D. 585 (S.D. Tex. 2011)....................................................8

*Resolution Trust Corp. v. Dabney*, 73 F.3d 262 (10th Cir. 1995) ...................................................8

*Schlagenhauf v. Holder*, 379 U.S. 104 (1964).......................................................7

*Tollett v. City of Kemah*, 285 F.3d 357 (5th Cir. 2002) ...............................................10

*United States v. Holley*, 942 F.2d 916 (5th Cir. 1991)....................................................7

*United States v. McWhirter*, 376 F.2d 102 (5th Cir. 1967)....................................................7

*Weaver v. Mateer & Harbert, P.A.*, 2012 U.S. Dist. LEXIS, at *44 (M.D. Fla. July 27, 2012) ...16

## STATUTES

FED. R. CIV. P. 26(b)(1) ...............................................................7, 9

FED. R. CIV. P. 30(c)(2)................................................................................................8, 11

FED. R. CIV. P. 30(d)(2) ................................................................................................9, 10

FED. R. CIV. P. 30(d)(3)(a) ................................................................................................8

FED. R. CIV. P. 34(b)(1)(b)................................................................................................9

FED. R. CIV. P. 37(a)(2)................................................................................................9

FED. R. CIV. P. 37(a)(3)(C) ................................................................................................10

FED. R. CIV. P. 37(a)(5)(A) ................................................................................................10

Fla. Stat. § 688.001 ................................................................................................12

Fla. Stat. § 688.002 ................................................................................................16

Plaintiffs Disability Law Claims, P.A. d/b/a Lavan & Neidenberg, P.A. (L&N) and Case Ghost, Inc. ("Plaintiffs") file this Motion to Compel, Request for Attorneys' Fees and Sanctions, and Brief in Support against Non-parties John Emerick and David Cooke as follows:

## I.

## PRELIMINARY STATEMENT

This Motion relates to depositions of non-party witnesses that occurred in this District on October 20 and 21, 2015, in connection with an underlying action pending in the United States District Court for the Southern District of Florida.

On May 19, 2014, Plaintiffs commenced an action in the Southern District Court of Florida against Defendant, IMS.[1]  Plaintiffs Amended Complaint, deemed filed on June 8, 2015, which is the operative complaint, alleges that IMS: (1) breached an Agreement executed in November 2010 (2010 Agreement); (2) violated Florida's Uniform Trade Secret Act; (3) violated Florida's Deceptive and Unfair Trade Practices Act; (4) breached fiduciary duties owed to L&N; and (5) breached sales order agreements for the purchase of Leads.[2]

On October 7, 2015, Plaintiffs served David Cooke and John Emerick with subpoenas duces tecum requiring them to appear for deposition in Dallas, Texas, on October 20 and 21, 2015, respectively.[3]  In addition, Plaintiffs served a re-notice of taking the video deposition duces tecum of David Cooke and re-notice of taking the video deposition of John Emerick.[4]

---

[1] See Complaint for Damages and Injunctive Relief, attached to Appendix in Support of Plaintiffs' Motion to Compel, Request for Attorneys' Fees and Sanctions ("App." 000001-000025).

[2] See Amended Complaint for Damages and Injunctive Relief ("Am. Compl.") [Dkt. No. 49] ¶¶ 78-119, attached to the Appendix in Support of Plaintiffs' Motion to Compel, Request for Attorneys' Fees and Sanctions (App. 000026-000050).

[3] See Subpoenas to Testify and Verified Return of Service (App. 000051-000052).

[4] See Re-Notice of Taking the Video Deposition of David Cooke (App.000053-000058); Re-Notice of Taking the Video Deposition of John Emerick (App. 000059-000070). The depositions of these witnesses were

During the depositions of Messrs. Cooke and Emerick, counsel for the witnesses instructed the witnesses not to answer questions based on relevance, confidentiality, and "form". Those instructions were improper and have resulted in a delay in Plaintiffs' obtaining relevant discovery regarding their claims against IMS.

The testimony of Mr. Cooke and Mr. Emerick is critical to Plaintiffs' claims. As set forth more fully below, Mr. Cooke and Mr. Emerick are the former owners and principals of IMS. They each executed the 2010 Agreement and operated IMS until they sold IMS in 2012.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Parties

#### 1.    Plaintiffs

Plaintiffs provide consulting and outsourcing services to companies and law firms that assist individuals who are seeking to obtain Social Security Disability ("SSD") benefits and Veteran's Affairs ("VA") benefits.[5]  Specifically, through use of proprietary process and technologies, Plaintiffs assist their customers in streamlining operations to improve the chances of identifying potential clients with SSD and VA claims.  This service is, in part, accomplished with software designed to better qualify leads.  The software, known as EZ Claim, is used by both L&N and Case Ghost.[6]

---

previously noticed and scheduled in September through defense counsel. Plaintiff agreed to reschedule the depositions to accommodate the witnesses, their counsel, and defense counsel.

[5] *See* Am. Compl. ¶¶ 1, 4 (App. 000026-000027).

[6] *See id.*

    **2.**      **Defendant**

In 2009, IMS was operated by its founders, David Cooke ("Cooke") and John Emerick ("Emerick").  IMS was a lead generation company with emphasis in generating client leads for law firms in a variety of practice areas, including SSD benefits.  IMS collected leads through various marketing channels around the country and sold the leads to its customers, who purchased leads for purposes of obtaining clients needing representation.[7]  Although initially a lead supplier to L&N, as a result of unlawful actions, IMS has since positioned itself as a direct competitor of Plaintiffs.[8]

**B.**     **<u>L&N Uses Its Proprietary Software To Screen And Qualify Leads It Purchases From IMS</u>**

Beginning in 2009, L&N and IMS entered into a business relationship whereby L&N purchased SSD leads from IMS.  Upon receipt of leads from IMS in connection with the sales orders, Plaintiffs then evaluate the individual's eligibility for SSD and VA benefits.[9]

L&N developed a novel system to streamline and create consistency and objectivity in the lead screening process.  In particular, since 2010, L&N has used its confidential and proprietary software named "EZ Claim" to screen the leads it purchases to better identify clients who may be eligible for SSD and VA services.  EZ Claim contains a module named "Intake Wizard".  Intake Wizard is L&N's confidential and proprietary system  that  elicits certain data and information about the lead to determine potential eligibility for benefits and terminates those

---

[7] *See id.*

[8] *See id.*

[9] *See id.*

                                                                             

leads that are not likely to qualify for SSD or VA services and approves leads that are viable claims.  The system contains valuable trade secrets of Plaintiffs.[10]

## C.   The October 2010 Agreement Between L&N And IMS

IMS recognized the Intake Wizard as a powerful tool.[11]

On November 4, 2010, L&N and IMS executed a contract whereby L&N was to provide Intellectual Property to IMS.[12]  In exchange, among other things, IMS was to provide L&N with the first right of refusal for IMS leads in Florida, Georgia, Ohio, and Pennsylvania (hereinafter "Territory").[13]

The "General Terms" of the Agreement also prohibit the unauthorized sharing or distribution of the Intellectual Property or a work created with the assistance of L&N's property:

> IMS understands that L&N utilizes its Intellectual Property to maintain a strategic competitive advantage over other Social Security Disability companies.  IMS agrees not to share Intellectual Property or IMS Intake Wizard with any company or other entity (hereinafter "Business") that provides Social Security Disability Services in Florida, Georgia, Ohio or Pennsylvania.

> IMS agrees not to share knowledge, license, or sell the IMS Intake Wizard for use in the Territory to its clients or other companies.[14]

> On behalf of IMS, the contract was executed by the co-owners of IMS— Emerick and Cooke.[15]

---

[10] *See id.*

[11] *See id.* ¶ 18 (App. 000030).

[12] *See id.*, Ex. 1, §1.1 (App. 000023).

[13] *See id.,* Ex. 1, §1.3 (App. 000023).

[14] *See id.*, Ex. 1, §2.1 (App. 000023).

[15] *See* Deposition of David Cooke ("Cooke Dep.") 13:10 – 14:10 (App. 000083-000084).

**D.**     **The Principals Of L&N Form Case Ghost, An SSD Outsource Service.**

In early 2012, the principals of L&N began the process of organizing Case Ghost, Inc. as an SSD outsource service to meet market demand for bundled services from disability law firms and disability advocacy groups.  An outsource provider can handle intake for a lead in addition to offering a variety of services, such as consulting, implementing lead screening criteria, accepting and retaining claimants and submitting completed claimant applications.  Case Ghost was authorized and permitted to use Intake Wizard in providing these types of services.[16]

**E.**     **Plaintiffs Learn That IMS Has Breached The 2010 Agreement.**

In July 2012, Plaintiffs learned that a law firm in the Territory was using an IMS screening tool for SSD leads, in violation of the 2010 Agreement. [17]

Incredibly, it now appears evident that IMS and its principals—Cooke and Emerick—had no intention of fulfilling their obligations under the 2010 Agreement.  Premier Disability Services, LLC ("Premier"), a nationwide social security disability advocacy group[18] that assists individuals seeking government benefits, including social security disability benefits,[19] was formed on October 26, 2010.[20]  Plaintiffs learned through discovery responses in September and October 2015 that from the date of Premier's formation, Cooke has held an ownership interest in Premier through an entity in which he is the sole owner,[21] and has held the title of Chief Marketing Officer with Premier.[22]  In addition, Plaintiffs recently learned that Emerick has also

---

[16] *See* Am. Compl. (App. 000026-000050).

[17] *See id.* ¶ 42 (App. 000035).

[18] *See* Cooke Dep. 12:3-5 (App.000082).

[19] *See* Emerick Dep. 31:17-24.

[20] *See* Cooke Dep. 21:13-25 (App.000091).

[21] *See id.* 11:21-12:5; 22:1-5.

[22] *See id.* 26:21 – 27:10.

held an ownership interest in Premier since its formation through a company he owns.[23]  Emerick signed an operating agreement for Premier on November 3, 2010, the day before he executed the 2010 Agreement on behalf of IMS and L&N.[24]  An Operating Agreement and Member Agreement for Premier were produced by IMS in discovery as IMS 0045836 – IMS 0045852. Those documents show that Mr. Cooke and Mr. Emerick agreed to terms pertaining to the provision of leads between IMS and Premier.[25]  The terms between IMS and Premier are relevant because the next day, IMS signed the Agreement with L&N which was to have secured for L&N first right of refusal for leads.[26]  In other words, unbeknownst to L&N, Cooke and Emerick by virtue of their ownership interests in Premier were competing for leads with L&N in the Territory. Cooke, Emerick, and Premier failed to disclose this relationship, leaving L&N to believe it was dealing with a lead supplier when IMS was also in control of a competitor.

### III.

### <u>SUMMARY OF THE ARGUMENT</u>

Cooke and Emerick (together, the "Deponents"), the founders of Defendant IMS, repeatedly failed and refused to answer relevant deposition questions.  In fact, often the only basis given for Deponents' refusal to answer and counsel's instructions not to answer were objections based on relevance and form.  Such discovery conduct is highly improper.[27] Accordingly, the Court should enter an order:  (1) compelling Cooke and Emerick to appear again for depositions and fully answer the questions on which Plaintiffs move and all

---

[23] *See* Emerick Dep. 247:2 – 248:25; *See* Am. Compl. Ex. 1.

[24] *See id.* 33:2-33:1; *See* Am. Compl. Ex. 1.

[25] *See* Operating Agreement (App. 0000628-0000639).

[26] *See* October 27, 2010 Agreement (signed November 4, 2010) (App. 0000640-0000642).

[27] *See infra* nn.34-38.

appropriate follow-up questions; (2) awarding Plaintiffs' reasonable attorneys' fees and expenses; and (3) enter sanctions against Deponents, and their counsel, for the obfuscatory conduct and ensure their full compliance with discovery obligations.

## IV.

## APPLICABLE LEGAL STANDARDS

### A.   The Scope Of Discovery.

The scope of discovery under the Federal Rules of Civil Procedure is broad[28] and should be liberally construed in favor of full and complete discovery.[29]   Under the Federal Rules, a litigant is entitled to any discovery relevant to the subject matter of the litigation, or likely to lead to the discovery of admissible evidence.[30]   For purposes of discovery, the United States Supreme Court has defined "relevance" broadly, to encompass any matters that bear on, or that reasonably could bear on, any issue that is or may be in the case.[31] Moreover, "where relevance is in doubt, the Court should be permissive in allowing

---

[28] *See Schlagenhauf v. Holder*, 379 U.S. 104, 114-115 (1964) ("Deposition-discovery rules are to be accorded a broad and liberal treatment to effectuate their purpose that civil trials in the federal courts no longer need be carried on in the dark."); *United States v. Holley*, 942 F.2d 916, 924 (5th Cir. 1991).

[29] *See Hickman v. Taylor*, 329 U.S. 495, 501 (1947) ("The way is now clear, consistent with recognized privileges, for the parties to obtain the fullest possible knowledge of the issues and facts before trial."); *United States v. McWhirter*, 376 F.2d 102, 106 (5th Cir. 1967); *Ferko v. NASCAR*, 218 F.R.D. 125, 132 (E.D. Tex. 2003) ("Courts construe discovery rules liberally to serve the purposes of discovery:  providing all parties with information essential to the proper litigation of all relevant facts, eliminating surprise, and promoting settlement.").

[30] *See* FED. R. CIV. P. 26(b)(1).

[31] *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) ("The key phrase in this definition— 'relevant to the subject matter involved I the pending action'—has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case. . .[The] court should and ordinarily does interpret 'relevant' very broadly to mean matter that is relevant to anything that is or may become an issue in the litigation.").

discovery."[32] Accordingly, "[a] request for discovery should be allowed unless it is clear that the information sought can have no possible bearing on the claim or defense of a party."[33]

## B. The Obligations Of The Deponent.

If an attorney has an objection to questions being asked of his client during a deposition, he should state the objection on the record so that the evidence can be taken subject to the objection.[34] Further, an attorney "may instruct a deponent not to answer <u>only</u> when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion [to terminate or limit the deposition] [35] under Rule 30(d)(3)."[36] Accordingly, courts have repeatedly held that it is highly improper to instruct a witness not to answer a question based on a relevancy objection.[37] In fact, such conduct is "completely indefensible,

---

[32] *Rangel v. Mascolio*, 274 F.R.D. 585, 590 (S.D. Tex. 2011).

[33] *Id.*

[34] *See Howell v. Std. Motor Prods.*, 2001 U.S. Dist. LEXIS 5295, at *7 (N.D. Tex. April 27, 2001) ("Numerous federal courts have held that if an attorney has an objection to the questions being asked of his client, he should place it on the record so that the evidence can be taken subject to such objection.").

[35] FED. R. CIV. P. 30(d)(3)(a).

[36] *See* FED. R. CIV. P. 30(c)(2).

[37] *See Howell*, 2001 U.S. Dist. LEXIS 5295, at *7-8; *Rangel*, 274 F.R.D. at 590 ("Because the plain language of Rule 30 is rather clear on what types of objections counsel may make and when counsel may instruct a deponent not to answer a question, courts have generally concluded that it is improper to instruct a witness not to answer a question based on a relevancy objection."); *Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995); *Gober v. City of Leesburg*, 197 F.R.D. 519, 520 (M.D. Fla. Nov. 8, 2000); *Quantachrome Corp. v. Micromeritics Instrument Corp.*, 189 F.R.D. 697, 700 (S.D. Fla. Oct. 30, 1999); *Furniture World, Inc. v. D.A.V. Thrift Stores*, 168 F.R.D. 61, 63 (N.D.M. 1996). The only exception is if counsel's questions go so far beyond the realm of possible relevance where the deposition is being conducted in an abusive manner (*i.e.*, bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party), then it would be permissive to instruct a deponent not to answer and move for a protective order under Rule 30(d)(3). Instructive here is the fact that: (1) no such accusation has been made (nor could it); and (2) the deponents have not filed the requisite motion. *See Howell*, 2001 U.S. Dist. LEXIS 5295 at *6. ("If counsel believed that Standard's attorney was conducting the deposition in bad faith or in a manner designed to annoy, embarrass, or harass Mr. Howell . . . then the proper procedure would have been to suspend the deposition and immediately present a motion to this Court pursuant to Federal Rule of Civil Procedure 30(d)(3). Howell's attorney took no such action. Accordingly, it is hereby ORDERED that Standard's Motion to Compel is GRANTED as to the unanswered deposition questions asked Plaintiff Howell"); *Rangel*, 274 F.R.D. at 589 n. 4 ("Notably, during the deposition, Ms. Ceaser never informed Mr. Goldman that she intended on taking this court of action.

and runs counter to numerous provisions in the Federal Rules of Civil Procedure and the Northern District of Texas's standards for attorney conduct set forth in *Dondi Properties Corp. v. Commerce Savings and Loan Ass'n*, 121 F.R.D. 284, 287-88 (N.D. Tex. 1988)."[38]

## C.     Compelling Responses From Recalcitrant Parties

A motion to compel against a non-party must be filed with the Court where the discovery is or will be taken.[39] On a motion to compel, the movant must demonstrate that the discovery sought is reasonably calculated to lead to the discovery of admissible evidence.[40] The burden then shifts to the non-producing party to prove that its exemption, immunity, or objection is sufficient to block each particular request.[41]

## D.     Awarding Sanctions

Pursuant to Federal Rule of Civil Procedure 30(d)(2), the Court may impose appropriate sanctions, including reasonable attorneys' fees and expenses, on a person who

---

Moreover a motion for protection was never filed by Plaintiffs' counsel even though Plaintiffs' counsel continues to assert that Mr. Goldman's questions were outside the scope of discovery.  Although the court does not believe that Plaintiffs' failure to file a motion for protection is necessarily dispositive of whether Ms. Ceaser's actions were appropriate, multiple courts in the Fifth Circuit have at least considered it as part of their determination.").

[38] *Howell*, 2001 U.S. Dist. LEXIS 5295, at *7-8.

[39] *See* FED. R. CIV. P. 37(a)(2).

[40] *See* FED. R. CIV. P. 26(b)(1); *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470 (N.D. Tex. 2005) ("Unless it is clear that the information sought can have no possible bearing on the claim or defense of a party, the request for discovery should be allowed.").

[41] *See* FED. R. CIV. P. 34(b)(1)(b); *Merrill*, 227 F.R.D. at 470 ("When the discovery sought appears relevant, the party resisting the discovery has the burden to establish lack of relevance."); *Centeno Supermarkets, Inc. v. H.E. Butt Grocery Co.*, SA-83-CA72, 1987 U.S. Dist. LEXIS 14168, at *12-13 (W.D. Tex. Sept. 2, 1987) ("The Magistrate correctly found that the burden of proof is on the individual asserting the privilege to establish the elements necessary to support the privilege".).

impedes, delays, or frustrates the fair examination of the deponent.[42] Further, Rule 37(a)(5)(A)[43] provides that if a motion for an order compelling discovery:

> is granted—or if the disclosure or requested discovery is provided after the motion is filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."[44]

The Court may deny a request for reasonable attorneys' fees and costs only if: (1) "the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;" (2) "the opposing party's nondisclosure, response, or objection was substantially justified;" or (3) "other circumstances make an award of expenses unjust."[45]

## V.

## ARGUMENTS AND AUTHORITIES

### A.    The Court Should Compel David Cooke To Answer Deposition Questions He Improperly Refused To Answer.

#### 1.    Cooke improperly refused to answer questions regarding his economic interests in the outcome of this Litigation.

Cooke's failure and refusal to answer six (6) questions regarding his economic interests in the outcome of this Litigation is without merit.[46]

---

[42] *See* FED. R. CIV. P. 30(d)(2).

[43] *See* also FED. R. CIV. P. 37(a)(3)(C).

[44] FED. R. CIV. P. 37(a)(5)(A); *Tollett v. City of Kemah*, 285 F.3d 357, 367 (5th Cir. 2002) ("Under Rule 37 if a motion to compel is granted, the district court 'shall … require the party … whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees'.").

[45] See FED. R. CIV. P. 37(a)(5)(A).

[46] *See* Cooke Dep. 192:6 –10; 11-15; 16-22; 23-25; 193:1-7; 193:21 – 194:17   (App. 000262 - 000264).

Each of the six questions relates to Cooke's financial interest in the outcome of this litigation.[47]  For example, whether Cooke continues to have an ownership interest in IMS, whether Cooke may have to return, or not receive, some of the proceeds from the sale of his ownership interest in IMS depending on the outcome of this litigation, and whether he, or an insurer on his behalf, may have to pay any portion of a settlement by, or a judgment against, IMS, are directly relevant to Cooke's credibility—they relate to bias.

A deponent may refuse to answer a question only if it is necessary to:  (1) preserve a privilege; (2) enforce a limitation ordered by the court; or (3) file a motion to limit or terminate the deposition pursuant to Rule 30(d)(3).[48]  Neither Cooke nor his counsel, however, asserted any of those grounds as the basis for Cooke's refusal to answer and counsel's instructions that he not answer, the foregoing questions.[49]  Instead, Cooke's counsel merely stated "object to the form of the question.  I'll instruct him not to answer."[50]  That instruction was improper.[51]  Accordingly, the Court should compel Cooke to attend a second deposition and answer the foregoing questions and all follow-up questions.

### 2. Cooke improperly refused to answer questions regarding the sale of IMS that are relevant to damages and liability issues.

Cooke's failure and refusal to answer thirteen (13) questions regarding the sale of IMS is without merit.[52] Cooke and Emerick sold their shares in 2012.[53]  Plaintiffs are entitled

---

[47] *See id.*

[48] *See* Fed. R. Civ. P. 30(c)(2).

[49] *See supra* n.46.

[50] *See id.*

[51] *See, e.g., supra* nn.34-38.

[52] *See* Cooke Dep. 188:19 – 189:4; 189:13 – 190:8; 191:4-11; 12-23; 191:24 – 192:5; 193:8-12; 13-20; 194:18 – 195:2; 223:3 – 224:24; 227:24 – 228:22; 234:17 – 235:2; 235:3-8; 9-14 (App. 000258-000262; App. 000264-000265; App. 000295-000297; App. 000300-000301; App. 000307-000308).

to learn the sales price and how that price was allocated among IMS's assets (including any intake software derived from Plaintiffs' trade secrets and the materials delivered under the 2010 Agreement).   That information is relevant to Plaintiffs' damages and disgorgement model (value derived from their trade secrets).[54]

In addition, Plaintiff is entitled to discover what representation and warranties, disclosures, and indemnification were made by IMS or Cooke in the sale of IMS because those documents may include admissions regarding breaches of duties, the obligations of IMS to Plaintiffs, and other relevant information (*e.g.*, damages, potential additional parties, *etc.*).   More specifically, Plaintiffs are entitled to know, among other things, what was disclosed to RME Group Holding Company / Leading Response regarding:   (1) the 2010 Agreement; (2) L&N's right of refusal; (3) the sale of leads by IMS to others on better terms; (4) the terms offered to others; and (5) the use of L&N's trade secrets.

The questions set forth above, which Cooke refused to answer, directly concern those issues.   Again, however, Cooke's counsel:   (1) objected to the form of the questions; (2) objected to relevance;[55] and (3) instructed Cooke not the answer the questions.[56]   Counsel may not instruct a deponent not to answer a question based on a relevance or form

---

[53] *See* Cooke Dep. 186:17 – 20; Emerick Dep. 209:19-21;  21:5 – 21:24 (App. 000256; App. 000559; App. 000357).

[54] *See* Fla. Stat. § 688.001, *et seq.*

[55] In addition, in regard to some questions, counsel raised the issue of confidentiality.   That objection, however, has no basis as a protective order has been entered.   *See* Stipulated Protective Order (App.000596-000611).   Moreover, even after counsel asked for materials to be designated as "attorneys' eyes only," counsel instructed Cooke to not answer the questions.   *See* Cooke Dep. 223:3 – 224:24 (App. 000295-000297).   In addition, in regards to Exhibit 112, counsel asserted, without more, that the document should not have been produced and, therefore, instructed Cooke not to answer any questions.   *See* Cooke Dep. 227:11 – 228:22. Exhibit 112, however, was produced by IMS in discovery prior to the depositions of Cooke and Emerick. Counsel should have put the objections on the record and allowed the questions to be answered.

[56] *See* Cooke Dep. 188:19 – 195:2; 223:3 – 224:24; 227:24 – 228:22; 235:3–14; 234:17 – 235:2 (App. 000259-000266; App. 000295-000297; App. 000300-000301; App..000307-000308).

objection.[57]   Accordingly, the Court should compel Cooke to appear for a second deposition and to answer the foregoing questions and all appropriate follow-up questions.

### 3.   Cooke improperly refused to answer questions regarding his interest in Premier.

<u>Third</u>, Cooke's failure and refusal to answer seven (7) questions regarding his interest in Premier is without merit.[58]

Cooke has an ownership stake in Premier through a company he owns.[59]   Premier was formed in October 2010 as a SSD outsource service — *i.e.*, a competitor of L&N in the Territory.[60]   Cooke and Emerick were involved in the formation of Premier despite their signatures on behalf of IMS on the October 2010 Agreement which required IMS, among other things: not to share L&N's intellectual property with any company or other entity that provides Social Security Disability services in Florida, Georgia, Ohio, or Pennsylvania (the "Territory"), and not to share or distribute any work created with the assistance of L&N's intellectual property to IMS' clients for use in the Territory.[61]   There is no dispute that Premier became a client of IMS after it was formed. The relationship between and among Cooke, Emerick,  IMS, and Premier is relevant to liability and damages.

The only basis given for Defendant and Cooke's counsel's instructions to Cooke to not answer the foregoing questions was that Exhibit 112 was allegedly inappropriately

---

[57] *See, supra* nn.34-38.

[58] *See* Cooke Dep. 228:23 – 229:2; 229:23 – 230:5; 14-19; 230:20 – 231:4; 231:5-15; 16-20; 232:11-20 (App. 000301-000305).

[59] *See* Operating Agreement (App. 000628-000639).

[60] *See id.*

[61] *See* October 27, 2010 Agreement (App. 000640-000642).

produced.[62]   The fact is, the document—Premier's Operating Agreement—was produced by IMS in discovery prior to the depositions, is relevant and responsive to requests for production propounded by Plaintiffs. There is no legitimate basis for a claim that the document was "inappropriately produced" or that no questioning on the document should occur. Parties and non-parties are not afforded the ability to shield from discovery relevant and responsive documents or questions thereon during deposition without a legitimate basis or some prior Court Order. The instructions by counsel, therefore, were improper. Accordingly, the Court should compel Cooke to appear for a second deposition and answer the foregoing questions and all appropriate follow-up questions.

**4.     Cooke improperly refused to answer questions regarding IMS selling leads to Premier, which are relevant to IMS's alleged breach of the right of first refusal provision of the 2010 Agreement and damages caused thereby.**

Cooke's failure and refusal to answer six (6) questions regarding IMS' sales of leads to Premier is without merit.[63] Pursuant to Section 1.3(a)-(b) of the 2010 Agreement, IMS was required to "provide L&N with the first right of refusal for IMS leads in Florida, Georgia, Ohio, and Pennsylvania…The cost of such leads will be at the current market value IMS charges for such leads in that Territory."[64]   Consequently, information concerning leads provided by IMS to Premier, including the volume, the prices, and the terms, are relevant to, at a minimum:   (1) breach of the 2010 Agreement; (2) calculations of damages; and (3)

---

[62] *See* Cooke Dep. 227:11 – 230:19.

[63] *See id.* 232:21 – 233:1; 2-7; 8-16; 17-24; 233:25 – 234:7; 234:8-16 (App. 0000305-000307).

[64] *See* Oct. 27, 2010 Agreement (App. 000640-000642).

Plaintiffs' unfair competition claim.  Nonetheless, counsel refused to allow Cooke to answer the questions on the basis that Exhibit 112 was mistakenly produced.[65]

For the reasons set forth in the preceding section, the objections and instructions are improper.  Moreover, though the questions may be able to be answered by reference to Exhibit 112, the questions do not require Cooke to reference the document.  Accordingly, the Court should compel Cooke to appear for a second deposition and answer the foregoing questions and all appropriate follow-up questions.

**B.**     **The Court Should Compel John Emerick To Answer Deposition Questions He Improperly Refused To Answer.**

   1.     **Emerick improperly refused to answer questions regarding his conversations with Cooke regarding the matters at issue in this litigation.**

Emerick's failure and refusal to answer three (3) questions regarding his conversations with David Cooke is without merit.[66]  Counsel objected to those questions and instructed Emerick not to answer based on the assertion of an unidentified privilege.[67]  There, however, is no indication that an attorney was involved in Emerick's conversations with Cooke nor that any other, though unspecified, privilege applies.  Moreover, the second question required merely a yes or no answer and, thus, does not require the divulging of privileged information.  Emerick has not, and cannot, meet his burden to establish that the answers to the foregoing questions are "privileged."  Accordingly, the Court should compel Emerick to appear for a second deposition and answer the foregoing questions and all appropriate follow-up questions.

---

[65] *See supra* n.62.

[66] *See* Emerick Dep. 42:7-18; 198:9-15 (App. 000378; App. 000536).

[67] *See id.*

**2.    Emerick improperly refused to answer questions regarding whether L&N disclosed its trade secrets to IMS in trust that they would not be disclosed to any other company, an issue relevant to Plaintiffs' claims, including misappropriation and breach of fiduciary duties.**

Emerick's failure and refusal to answer three (3) questions regarding whether IMS held L&N's trade secrets in trust is without merit. [68]

Plaintiffs are entitled to discover whether IMS was trusted not to disclose Plaintiffs' trade secrets. That is an element of, among others, Plaintiffs' claims for: (1) misappropriation of trade secrets; and (2) breach of fiduciary duty.[69]   Counsel, however, instructed Emerick not to answer the questions based on the objection that the questions called for a legal conclusion.[70]   The objection and instructions are improper[71] and without merit—whether L&N placed trust in IMS is an issue of fact.  Accordingly, the Court should compel Emerick to appear for a second deposition and answer the foregoing questions and all appropriate follow-up questions.

**3.    Emerick's Counsel improperly coached his client on how to answer a question through the guise of a long and improper speaking objection.**

Emerick's counsel improperly coached the witness on two (2) separate occasions. [72] With regard to the first question[73], counsel intervened to coach the witness by providing a long-winded instruction on the testimony elicited. Not surprisingly, the witness accepted the

---

[68] *See* Emerick Dep. 90:21 – 91:17; 92:7-25; 119:21 – 120:8 (App. 000426-000428; App. 000455).

[69] *See* (1) Fla. Stat. § 688.002; and (2) *Weaver v. Mateer & Harbert, P.A.*, 2012 U.S. Dist. LEXIS, at *44 (M.D. Fla. July 27, 2012).

[70] *See* Emerick Dep. 90:21 – 91:17; 92:7 – 25 (App. 000426-000428).

[71] *See, e.g., Howell*, 2001 U.S. Dist. LEXIS 5295, at *6 ("The Court is unaware of any caselaw or provisions of the Federal Rules of Civil Procedure that support the position taken by Howell's attorney that her client could refuse to answer a deposition question on the grounds that it called for a legal conclusion…Howell's attorney should simply have placed her objection on the record and permitted her client to answer.").

[72] *See* Emerick Dep. 157:8 – 158:15; 189:7 – 191:8 (App. 000493-000494; App.000527-000529).

coaching and gave the response that his counsel coached him to provide.[74] The second question elicited another barrage of improper objections from counsel, effectively coaching the witness into an answer.[75] This obstructionist and improper behavior must end.  The Court should enter appropriate sanctions and an order to prevent this conduct in future depositions.

> **4.    Emerick was improperly instructed by counsel to not answer questions based on baldly asserted confidentiality and then Counsel improperly instructed Emerick not to testify as to whether a confidential agreement exists.**

Emerick's failure and refusal to answer a question on whether a confidentiality agreement exists between Emerick and RME Holdings is without merit.[76]  As previously noted,[77] Counsel objected and instructed witnesses to not answer questions related to the sale of IMS to RME Holdings/Leading Response based, in part, on confidentiality.[78]  Counsel cannot claim confidentiality and then refuse to allow the deponent to even answer whether a confidentiality provision exists.  Accordingly, the Court should compel Emerick to appear for a second deposition and answer the foregoing question and all appropriate follow-up questions.

---

[73] *Id.* 157:8 – 158:15 (App. 000493-000494).

[74] *See id.*

[75] *See id.* 189:7 – 191:8 (App. 000527-000529).

[76] *See id.* 195:13-24 (App. 000533).

[77] *See supra* n.52.

[78] *See* IM Solutions, LLC's Amended Answer to the Amended Complaint, Affirmative Defenses and Counterclaims ("IMS' Counterclaim") provides that IMS is owned by RME Group Holding Company (App. 0000643-000683).

**5.      Emerick improperly refused to answer a question about what he meant when he said "I do not recall."**

Emerick's failure and refusal to answer a question directed to his recollection from earlier testimony in the deposition is without merit.[79] Rather than allow the witness to explain what he meant by "I do not recall," counsel objected that the question was argumentative and, on that basis, instructed Emerick not to answer the question.[80]   The instruction was improper.[81]

**6.      Emerick improperly refused to answer questions regarding Premier Disability**

Emerick's failure and refusal to answer two (2) questions regarding Premier Disability is without merit. [82] Again, counsel, as they did in regard to Cooke's deposition, instructed Emerick not to answer questions about Premier's Operating Agreement because it was allegedly mistakenly produced.[83]   The objections and instructions are improper.[84] Accordingly, the Court should compel Emerick to appear for a second deposition and answer the foregoing questions and all appropriate follow-up questions.

---

[79] *See* Emerick Dep. 206:10  – 207:19 (App. 000545-000546).

[80] *See id.*

[81] *See supra* nn.34-38.

[82] *See* Emerick Dep. 238:11 – 242:10; 249:23 – 250:9 (App. 000578-000582; App. 000589-000590).

[83] *See* Emerick Dep. 238:11 – 242:10; 249:23 – 250:9 (App. 000578-000582; App.000589-000590).

[84] *See supra* nn.34-38.

**7.    Emerick improperly refused to answer questions regarding IMS selling leads to Premier.**

Emerick's failure and refusal to answer eighteen (18) questions regarding IMS selling leads to Premier Disability is without merit [85] Again, as was done in Cooke's deposition a day earlier, Emerick's counsel instructed him not to answer the foregoing questions because Exhibit 112 was allegedly mistakenly produced.  For the reason previously set forth, the objections and instructions are improper. Accordingly, the Court should compel Emerick to appear for a second deposition and answer the foregoing questions and all appropriate follow-up questions.

**C.    Plaintiffs' Are Entitled To An Award Of Their Reasonable Attorneys' Fees And Their Expenses To Be Incurred For The Second Depositions Of Cooke And Emerick.**

Plaintiffs request that the Court award them their reasonable attorneys' fees incurred in making this Motion.  In addition, Plaintiffs request that the Court order:  (1) the Deponents, their counsel, to pay for all expenses associated with having to re-depose Cooke and Emerick including the costs for the court reporter, videographer, travel to and from Florida, meals, and lodging; (2) issue appropriate sanctions to ensure the Deponents and their counsel comply with their discovery obligations because:  (a) despite Plaintiffs' good faith efforts to resolve the disputes the Deponents and their counsel have refused to comply with their discovery obligations; and (b) their failure to comply with their discovery obligations is not substantially justified.

---

[85] *See id.* 250:10-15; 16-22; 250:23 – 251:2; 251:3-9; 10-16; 17-24; 251:25 – 252:7; 8-16; 253:18 – 254:6; 254:14-18; 19-24; 255:4-9; 259:15-20; 21-25; 260:1-7; 8-12; 13-18 (App. 000590-000595; App. 000599-000600).

Plaintiffs have attempted in good faith to resolve the discovery disputes without the Court's intervention.  Throughout the depositions, Plaintiffs' counsel informed the attorneys and Deponents of their failure to comply with their obligations, but nonetheless they persisted in their obfuscatory conduct.  Further, on November 19-20, 2015, Plaintiffs' counsel conferred with Cooke's and Emerick's counsel in an effort to resolve these disputes. Despite affording both non-parties until the end of Tuesday, November 24, to indicate whether Plaintiffs' motion would be opposed or whether the issues could be resolved, neither non-party provided a response.  Accordingly, Plaintiffs were forced to file this Motion.

## VI.

## CONCLUSION

For all the foregoing reasons, Plaintiffs request that the Court: (1) Grant the Motion; (2) compel the Deponents to appear for a second deposition and to fully answer the questions on which Plaintiffs move and all appropriate follow-up questions; (3) award Plaintiffs their reasonable attorneys' fees and expenses (as described above); and (4) issue appropriate sanctions to ensure Deponents and their counsel fully comply with their obligations pursuant to the subpoenas.

LEWIS BRISBOIS BISGAARD & SMITH LLP
*Attorneys for Plaintiffs*
2100 Ross Avenue
Suite 2000
Dallas, Texas 75201
Telephone:     (214) 722-7100
Facsimile:     (214) 722-7111
Dunham.Biles@lewisbrisbois.com

/s/ C. Dunham Biles
C. Dunham Biles

cc:   U.S. Legal – via email (888-311-4240; 954-463-2933)
      Rachna Sullivan, Esq., Counsel for Premier Disability
      Thomas R. Stauch, Esq. (tstauch@ns-law.net), Counsel for John Emerick
      William R. Jenkins, Jr., Esq., Counsel for David Cooke

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 25, 2015, a copy of the foregoing was electronically filed with the Court and served by electronic mail and/or U.S. Mail on all counsel or parties of record on the service list.

/s/ C. Dunham Biles
C. Dunham Biles

## CERTIFICATE OF CONFERENCE

On November 19, 2015, counsel for Plaintiffs conferred contact counsel for the Deponents via e-mail correspondence and telephone conversations concerning the arguments raised in the Motion and the relief requested.  After providing Counsel for Deponent John Emerick a list of all of the deposition excerpts Plaintiffs are seeking to compel better answers to, Mr. Emerick's counsel requested an additional thirty (30) days to review and respond as to whether Mr. Emerick opposed the review sought. Given the fast-approaching discovery deadlines in Plaintiffs' case, in the Southern District of Florida, the requested extension was unreasonable.  Counsel for Plaintiff afforded Mr. Emerick's counsel until the end of the business day, Tuesday, November 24, to provide a response as to whether this issue could be resolved.

Counsel for Plaintiff also communicated a list of the deposition excerpts for Deponent David Cooke and afforded counsel for Deponent David Cooke until the end of Tuesday, November 24, to indicate whether Plaintiffs' motion would be opposed.

Counsel for the Deponents have not responded to Plaintiffs' request. Accordingly, Plaintiffs file this Motion.

/s/ C. Dunham Biles
C. Dunham Biles

## SERVICE LIST

LEWIS BRISBOIS BISGAARD & SMITH LLP

Kenneth Joyce, Esq.
Stacy Schwartz, Esq.
Ken.Joyce@lewisbrisbois.com
Stacy.Schwartz@lewisbrisbois.com
ftlemaildesig@lewisbrisbois.com
110 S.E. 6th Street, Suite 2600
Fort Lauderdale, FL 33301
Telephone:       (954) 728-1280
Facsimile:        (954) 728-1282
*Attorneys for Plaintiffs*


BERGER SINGERMAN LLP
Mitchell W. Berger, Esq.
Gavin C. Gaukroger, Esq.
mberger@bergersingerman.com
ggaukroger@bergersingerman.com
drt@bergersingerman.com
350 East Las Olas Boulevard, Suite 1000
Fort Lauderdale, FL  33301
Telephone:  (954) 525-9900
Facsimile:  (954) 523-2872
*Counsel for Defendant IM Solutions, LLC*

KATTEN MUCHIN ROSENMAN LLP
Christopher A. Hicks, Esq. (*Pro Hac Vice*)
Meghan D. Engle, Esq. (*Pro Hac Vice*)
christopher.hicks@kattenlaw.com
meghan.engle@kattenlaw.com
550 S. Tryon Street, Suite 2900
Charlotte, NC 28202-4213
Phone: (704) 444-2000
Facsimile: (704) 444-2050

Jeffrey A. Finn, Esq. (*Pro Hac Vice*)
jeffrey.finn@kattenlaw.com
2029 Century Park East, Suite 2900
Los Angeles, CA 90013
Telephone:   (310) 788-4494
Facsimile:   (310) 788-2050
*Counsel for Defendant IM Solutions, LLC*